## FRANCIS *v.* FRANCIS.

SPECIFIC PERFORMANCE — ALIENATION OF HOMESTEAD — WIFE'S SIGNATURE.

Complainant, at the solicitation of his parents, agreed to remain at home and provide for them, in consideration of which his father promised that whatever he should die possessed of should go to the son. Subsequently the parents joined in a deed of the homestead, to be held for the son in escrow, and delivered to him at his father's death. After the death of the father, complainant discovered a clause in the deed, of which he claimed to have been ignorant theretofore, declaring that title should not pass to him until the mother's death. Subsequently, a controversy having arisen over the possession of the premises, he filed a bill against his mother for specific per-

formance. *Held,* that, inasmuch as the deed itself expressly reserved the title until the mother's death, there was no alienation of the homestead, signed by her, upon which complainant's right thereto could be predicated as against her, and that any parol agreement or understanding was void under article 16, § 2, of the Constitution.

Appeal from Ionia; Davis, J. Submitted October 27, 1899. Decided November 14, 1899.

Bill by Fred L. Francis against Phebe L. Francis and others for the specific performance of an agreement for the conveyance of land. From an order overruling her demurrer to the bill, defendant Phebe L. Francis appeals. Reversed.

*R. A. & W. E. Hawley,* for complainant.

*Chaddock & Scully,* for appellant.

MOORE, J. Complainant filed a bill in chancery in which he averred, in substance, that he is the son of Ephraim and Phebe L. Francis; that Ephraim Francis was the owner of a lot in Portland, which he occupied with his wife as a homestead, which was of the value of $500. He avers he had planned to go from home to work, and that, yielding to the solicitations of his parents, and relying upon a promise of his father that whatever the father had at the time of his death in the way of property should belong to the complainant, he abandoned his plan of going away, and remained at home, working in the shop of his father and supporting his parents. He avers his father afterwards died, and that he paid the expenses of his illness, funeral, and burial. He avers that in 1888 his father and mother made him a deed of the said lot, which was delivered to his mother in escrow, to be delivered to the complainant upon the death of his father; that his mother afterwards delivered the deed, which complainant had recorded. Many things are stated in the bill which it is not necessary to mention here. It is

averred that the deed contained a clause reading as fol-
lows: "It being hereby expressly understood that the
title from the said first parties does not pass in the above-
described property to the said second party until the
death of both the said Phebe L. Francis and Ephraim
Francis,"—of which complainant had no knowledge until
June, 1898. He avers that it was represented to him,
after he discovered the clause in the deed, that his mother
had a life lease in said premises, and, supposing this was
true, he consented to lease the premises of her if she would
join with him in a new mortgage upon the premises. The
bill avers that the lease was made under a mutual mistake
of law and fact, and that a fair interpretation of the deed
is that complainant was to furnish his mother with a
home on the premises, which he is now, and always has
been, willing to do. The bill avers that the mother of
complainant insists that the relation between her and the
complainant is that of landlord and tenant, and has com-
menced summary proceedings to obtain possession of the
premises. It prays for specific performance of the agree-
ment between complainant and Ephraim Francis, that
the lease may be canceled, and for other relief, which it is
not necessary to mention further. The defendant Phebe
L. Francis demurred to the bill. From a decree overruling
the demurrer, she has appealed.

We think the demurrer should have been sustained.
Under the provisions of section 2, art. 16, of the Constitu-
tion, the homestead of Mrs. Francis could not be alien-
ated except by her signature to the paper creating the
alienation. It has been held over and over again that
any conveyance of the homestead without the signature
of the wife is void. See the many cases cited in note,
page 122, 1 Comp. Laws 1897. The only deed Mrs. Fran-
cis signed provided that the title to the premises should
not pass until the death of both of the grantors. The bill
of complaint shows that Mrs. Francis is yet living. Any
parol agreement she may have made in relation to the
land is void. By the terms of the deed, the title has not

yet passed to the complainant, and it is not competent for the court to decree it to pass. With this construction of the deed, the other allegations of the bill do not afford reasons for the interference of a court of equity.

The decree is reversed. The demurrer to the bill of complaint is sustained.

The other Justices concurred.